UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | | |
|---|---|---|
| MARY and RICHARD HOULE, | ) | |
|     Plaintiffs | ) | |
| | ) | |
|        v. | ) | Docket No. 2:13-cv-44 |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | |
| COMPANY and FEDERAL EMERGENCY, | ) | |
| MANAGEMENT AGENCY, | ) | |
|     Defendants | ) | |

MEMORANDUM OF LAW OF THE STANDARD FIRE INSURANCE COMPANY
IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
mbyrne@gravelshea.com

and

Craig R. Blackman, Esq.
Gina M. Stowe, Esq.
Stradley Ronon Stevens & Young, LLP
2005 Market Street
Philadelphia, PA  19103

For Defendant, The Standard Fire Insurance
Company

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ...................................................................................................2

II.     STATEMENT OF FACTS .....................................................................................3

        A.      Background of the National Flood Insurance Program ("NFIP") ...........................3

        B.      Plaintiffs' Policy and Hurricane Irene Claim.........................................................4

III.    ARGUMENT ...........................................................................................................7

        A.      Plaintiffs Failed to Meet the Proof of Loss Requirements of the SFIP. ..................7

        B.      Plaintiffs are Not Entitled to Any Additional Payments for Debris Removal.......10

        C.      Plaintiffs Have Presented No Evidence to Suggest that Standard Fire
                Improperly Allocated Debris Removal Costs to the Contents Limits. ..................13

IV.     CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

Cᴀsᴇs

*Davis v. Nationwide Mutual Fire Ins. Co.*,
   783 F.Supp.2d 825 (E.D. Va. 2011) .................................................................................12

*Geisler v. Don Hunt & Associates, Inc.*,
   No. 11–1113–JTM 2012 WL 966119 (D.Kan. March 21, 2012) .........................................12

*Ginart v. State Farm Cas. Ins. Co.*,
   No. 07-cv-6841, 2009 WL 537092 (E.D. La. March 4, 2009) ..............................................12

*Gowland v. Aetna*,
   143 F.3d 951 (5th Cir. 1998) .............................................................................................13

*Harbour Light Towers Ass'n, Inc. v. Ameriflood, LLC*,
   No. 10–2183, 2011 WL 2517222 (M.D. Fla. June 23, 2011) ...............................................12

*Jacobson v. Metropolitan Property & Casualty Insurance Co.*,
   672 F.3d 171 (2nd Cir. 2012) .................................................................................5, 11

*Mancini v. Redland Ins. Co.*,
   248 F.3d 729 (8th Cir. 2001) .............................................................................................5

*Office of Personnel Management v. Richmond*,
   496 U.S. 414 (1990) ...........................................................................................................13

*Remund v. State Farm Fire & Cas. Co.*,
   No. 07–cv–448, 2010 WL 2025591 (D.Utah May 18, 2010) ................................................12

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
   163 F.3d 161 (3rd Cir. 1998) ...........................................................................................4

Rᴜʟᴇs

44 C.F.R. Pt. 61. App. A(1) ..................................................................................................5, 10

44 C.F.R. Pt. 61, App. A(1) and App. A(1) ...............................................................................12

44 C.F.R. §§ 61.4(b), 61.13(d)....................................................................................................13

44 C.F.R. § 62.23 ..........................................................................................................................5

44 C.F.R. § 62.23(d) .....................................................................................................................5

Fed. R. Evid. 201(b)(2).................................................................................................................12

## CODES

42 U.S.C. §§ 4013, 4019 ................................................................................................... 4-5

42 U.S.C. § 4071(a) ............................................................................................................ 5

NFIP under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* .........................4

Defendant, The Standard Fire Insurance Company ("Standard Fire"), appearing in its fiduciary[1] capacity as the fiscal agent[2] of the United States and at the expense of the United States Treasury[3] submits this Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Summary Judgment.

I.   INTRODUCTION

Plaintiffs, Mary and Richard Houle ("Plaintiffs"), filed a complaint against The Standard Fire Insurance Company ("Standard Fire") seeking to recover purported flood-related damages to their residence that resulted from Hurricane Irene ("Plaintiff's Complaint"). Standard Fire filed a motion for summary judgment ("Standard Fire's Motion") on the ground that Plaintiffs failed to satisfy the SFIP's proof of loss requirement and are not, therefore, entitled to any additional payments under the subject SFIP.

Plaintiffs, in turn, filed a cross-motion for summary judgment ("Plaintiffs' Motion"), wherein they identify the two issues in the case as follows: (1) whether Standard Fire wrongly underpaid the Houles' contents claim under Coverage B in the amount of $12,046; and (2) whether Standard Fire wrongly refused to pay the full amount of $32,404 for the Plaintiffs' debris removal claim. (Plaintiffs' Motion at p. 2). According to Plaintiffs, Standard Fire based both of these purported underpayments on the improper application of all debris removal claims to the contents limit under Coverage B. (*Id.*) Plaintiffs argue that debris removal under Coverage C is subject to the combined limits of Coverage A and Coverage B. Accordingly, Plaintiffs argue, Standard Fire should move $12,046 of Plaintiffs' debris removal costs to the

---

[1] *See* 44 C.F.R. § 62.23(f).

[2] *See* 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998).

[3] *See* 42 U.S.C. § 4017(d)(1); *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3d Cir. 1998).

building limits of Coverage A, which would allow for another $12,046 of additional contents' losses to be paid under the contents limits of Coverage A.  (*Id.*)  Moreover, Plaintiffs claim that the remainder of the $32,404 in debris removal costs should be paid under the building limits of Coverage A.[4]  (*Id.*)

Standard Fire opposes Plaintiffs' Motion for the following reasons.  First, as set forth in detail in Standard Fire's Motion and its Reply in Further Support of Motion for Summary Judgment ("Standard Fire's Reply"), Plaintiffs failed to submit a proof of loss in accordance with the SFIP, which is a statutory prerequisite to coverage.  On that basis alone, Plaintiffs are not entitled to any additional payments under their SFIP.  Second, Plaintiffs' position that debris removal coverage is subject to the combined limits of Coverage A and Coverage B is contrary to law and FEMA's express interpretation of contents manipulation.  Finally, Plaintiffs have not submitted evidence of any additional debris removal costs that are properly allocable to Coverage A.  For all of these reasons, Plaintiffs' Motion should be denied.

II.   STATEMENT OF FACTS

A.   Background Of The National Flood Insurance Program ("NFIP").

Congress created the NFIP under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq. See*, *e.g.*, *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165-66 (3rd Cir. 1998) (discussing history and organization of NFIP and WYO Program).  The Director of FEMA is charged with overseeing and implementing the NFIP.  By statute, the Director of FEMA is authorized to promulgate regulations "for the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage."  42 U.S.C. §§ 4013,

---

[4] As set forth  in Plaintiffs' Motion, the parties expect that any dispute arising over the Houles' claim for structural damage under Coverage A will be rendered moot by a grant recovery expected for such losses under the Hazard Mitigation Grant Program.  (See Plaintiffs' Motion at p. 3, n. 1).

4019.  The regulations also prescribe the methods by which proved and approved losses under an

SFIP may be adjusted and paid.  *See id.*  Pursuant to FEMA regulations, "all policies issued

under the NFIP must be issued using the terms and conditions of the SFIP found in" 44 C.F.R.

Pt. 61. App. A(1).  *Id.*  Beginning on April 1, 1979, FEMA became responsible for the operation

of the NFIP through the facilities of the federal government.  *See* 42 U.S.C. § 4071(a).  The

Director of FEMA is authorized to use private insurance companies as "fiscal agents of the

United States" and to enter into any necessary contracts with insurance companies to implement

the NFIP.  *See id.* at § 4081.

In 1983, FEMA created the WYO Program.  *See id.*  The WYO Program is a program

whereby private insurance companies are allowed to issue, under their own names as insurers,

SFIPs.  *See* 44 C.F.R. § 62.23.  Participating companies in the WYO Program, such as Standard

Fire, are known as WYO companies.  *See id.*  A WYO company issuing flood insurance

coverage shall arrange for the adjustment, settlement, payment, and defense of all claims arising

from policies of flood insurance it issues under the NFIP, based upon the terms and conditions of

the SFIP.  44 C.F.R. § 62.23(d).  Significantly, flood insurance policies issued by WYO

companies, including Standard Fire, necessarily have the same terms and conditions of the SFIP,

which is a codified regulation.  *See* 44 C.F.R. Pt. 61. App. A(1).  In its capacity as a WYO

company, Standard Fire acts in a fiduciary capacity as fiscal agent of the United States.

*Jacobson v. Metropolitan Property & Casualty Insurance Co.*, 672 F.3d 171, 175 (2nd Cir. 2012);

*Mancini v. Redland Ins. Co.*, 248 F.3d 729, 734 (8th Cir. 2001).

      B.      Plaintiffs' Policy and Hurricane Irene Claim.

On August 28, 2011, Plaintiffs suffered a flood loss as a result of Hurricane Irene.

(Compl. ¶ 20; *see* Declaration of Scott Holmes, attached as Exhibit A to Standard Fire's Motion,

at ¶ 5 ("First Holmes' Declaration"), Docket No. 23).  On September 5, 2011, an independent

adjuster appointed by Standard Fire inspected and photographed the Property and Plaintiffs' purported damages. (*Id.* at ¶ 6). The inspection revealed that the Property was flooded to seven inches on the interior of rooms at one step above ground level, but that no water entered the main living area of the Property, which was elevated three steps. (*Id.* at ¶ 7). Water filled the basement to about five inches, and there was an exterior water line of 24 inches. (*Id.* at ¶ 8).

Thereafter, and following repeated requests by the Independent Adjuster to Plaintiffs to provide a contents list, repair estimates, and receipts, Plaintiffs produced a handwritten list of purportedly damaged contents. (*Id.* at ¶ 9). Many of the items on Plaintiffs' contents list did not contain pricing or valuation, and a number of the items were not identified during the Independent Adjuster's inspection. (*Id.*) Plaintiffs later revised their contents list to include pricing and photograph documentation for some, but not all, of their claimed contents. (*Id.* at ¶ 10). Plaintiffs also produced an estimate from GW Savage for purported repairs throughout the main level of the risk, despite the fact that the inspection revealed that the main level of the risk was not flooded. (*Id.* at ¶ 11).

On November 7, 2011, the Independent Adjuster provided Plaintiffs with a revised contents list, a Building Estimate, an APS (auxiliary detached garage) estimate (for a covered detached garage), and a Proof of Loss form for Plaintiffs' signature. (*Id.* at ¶ 12). Thereafter, instead of agreeing to the foregoing documents, Plaintiffs retained Marshall Gilinsky, Esquire, of Anderson, Kill & Olick, P.C., to represent them in connection with their flood claim. ( *Id.* at ¶ 13). On January 4, 2012, Mr. Gilinsky submitted to Standard Fire, on Plaintiffs' behalf, a purported proof of loss in the amount of $175,746.14. (*Id.; see also* Exhibit A-1 to First Holmes Declaration). However, t*he purported proof of loss was not accompanied by any supporting documentation whatsoever*. (*Id.*) Moreover, the amounts set forth in the purported proof of loss

provided by Plaintiffs' counsel were not even supported by the documents that Plaintiffs previously submitted to the Independent Adjuster.  (*Id.*)

On February 24, 2012, the Independent Adjuster provided a Report to Standard Fire, which set forth the amounts of covered building and contents damages.  (*Id.* at ¶ 14).  In accordance with the Independent Adjuster's Report, estimates and recommendation, Standard Fire made payments to Plaintiffs as follows: (1) $10,239.26 for building damages, which included payment in the amount of $644.82 for building debris removal; and (2) $74,010.95 for damaged contents, which included $6,056.97 in contents debris removal.  (Declaration of Scott Holmes in Support of Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Second Holmes Declaration"), attached hereto as Exhibit A, at ¶ 5).  In a letter dated March 20, 2012, Standard Fire denied payment for: (1) uncovered basement items; (2) damages to vehicles and contents that were not inside a fully enclosed building; and (3) contents for which Standard Fire did not receive supporting documentation. (First Holmes Declaration at ¶ 14).

On May 17, 2012, Plaintiffs submitted a supplemental Proof of Loss in the amount of $26,346.75, which constituted debris removal costs that were not included in Plaintiffs' original claim.  (*Id.* at ¶ 15).  Although the supplemental Proof of Loss was submitted outside the time permitted, Standard Fire submitted a request to FEMA for a limited waiver of the Proof of Loss requirement to pay this supplemental claim.  (*Id.*).  However, based upon the documents provided  by Plaintiffs, Standard Fire determined that the debris removal costs related to contents debris, and Plaintiffs only had $10,989.05 available contents coverage.  (*Id.*).  Accordingly, and despite Plaintiffs' failure to submit their documentation within the statutory deadline, FEMA approved a request submitted by Standard Fire for a *limited* waiver of the Proof of Loss policy provision.  (*Id.*).  Payment was issued to the Plaintiffs in the amount of $10,989.05, with a letter

explaining that Standard Fire was declining additional payment because the Contents limits were exhausted.  (*Id.*).

Plaintiffs appealed Standard Fire's denial of certain contents and debris removal costs to FEMA, in letters dated May 18, 2012 and August 3, 2012, respectively. (*See* Exs. B & C to Compl., *see also* Second Holmes' Declaration at ¶ 6).  In both appeals, Plaintiffs set forth the same arguments that they advance in this Motion – that  Standard Fire improperly allocated all of the debris removal costs to the contents limits of Coverage B.  (*Id.*)  According to Plaintiffs, Standard Fire should have allowed debris removal costs on the building estimate, which would have allowed for (1) all debris removal costs to be paid as under Coverage A and (2) additional unpaid contents to be covered under Coverage B.  (*See* Exs. B & C to Compl., *see also* Second Holmes' Declaration at ¶ 6).

Via a responsive letter sent to Plaintiffs' counsel, Marshall Gilinsky, on August 14, 2012, FEMA denied Plaintiffs' appeal and concurred with Standard Fire's s decision.  (Second Holmes Declaration at ¶ 7 ).  Moreover, in a letter dated August 21, 2012, Standard Fire advised Mr. Gilinsky that it reviewed a re-inspection report from FEMA's General Adjuster, which stated that, pursuant to FEMA WYO-10035, content debris may not be included in the building estimate.  (*Id.* at ¶ 8).  Accordingly, Standard Fire affirmed its denial of any additional claim for manipulation or removal of contents or debris.  (*Id.*)

III.   ARGUMENT

   A.   Plaintiffs Failed to Meet the Proof of Loss Requirements of the SFIP.

As set forth in detail in Standard Fire's Motion and Reply, Plaintiffs' purported proof of loss fails to comply with the requirements of the SFIP.  First, the purported proof of loss submitted by Plaintiffs states a Net Amount Claimed of $175,746.14.  It is impossible to determine from the documents that Plaintiffs submitted how they arrived at that number, or what

damages set forth in the documents are included in the amount sought.  It is not Standard Fire's responsibility to divine for which items in the submitted documentation Plaintiffs seek payment and for which items Plaintiffs do not.  For this reason alone, which Plaintiffs do not even address or oppose in their opposition to Standard Fire's Motion, Plaintiffs' submission does not constitute a proper proof of loss as required under the SFIP.

Moreover, the items for which they seek coverage in this case *were not even included* in the proof of loss that was submitted prior to the deadline for submitting a proof of loss.  As Plaintiffs acknowledge in their Opposition to Standard Fire's Motion, on May 17, 2012 (well past the January 26, 2012 extended statutory deadline to submit proofs of loss for Hurricane Irene, per FEMA Bulletin W-11120), Plaintiffs submitted a supplemental Proof of Loss in the amount of $26,346.75, which constituted debris removal costs that were not included in Plaintiffs' original claim.  (*See* Plaintiffs' Opposition to Standard Fire's Motion at p. 4*; see also* Declaration of Scott Holmes, attached as Exhibit A to Standard Fire's Motion at ¶ 15, Docket No. 23).  Although the supplemental Proof of Loss was submitted outside the time permitted, Standard Fire submitted a request to FEMA for a limited waiver of the Proof of Loss requirement to pay the supplemental claim.  (*See* First Holmes Declaration at ¶ 15).  However, Standard Fire determined that the debris removal costs related to contents debris, and Plaintiffs only had $10,989.05 available contents coverage.  (*Id.*)  Accordingly, and despite Plaintiffs' failure to submit their documentation within the statutory deadline, FEMA approved a request submitted by Standard Fire for a limited waiver of the Proof of Loss policy provision.  (*Id.*)  Payment was issued to the Plaintiffs in the amount of $10,989.05, with a letter explaining that Standard Fire was declining additional payment because the contents limits were exhausted.  (*Id.*)  Plaintiffs

were *not* granted a FEMA waiver for the unpaid amounts on the supplemental proof of loss or

with regard to any of its claimed contents for which it did not produce sufficient documentation.

　　　For these reasons, there can be no question that Plaintiffs have not met the proof of loss

requirements of the SFIP, which are a statutory prerequisite to coverage.  The only argument that

Plaintiffs raise to contest the proof of loss defense - that the cases cited by Standard Fire do not

specifically hold that the documents need to be physically attached to the proof of loss - does not

alter this conclusion.  Notably, Plaintiffs do not cite to any cases stating that a proof of loss does

not need to be accompanying by documentation, and such interpretation is inconsistent with the

express language of the SFIP on this point:

### VIII.   GENERAL CONDITIONS

### J.  Requirements in Case of Loss

> Within 60 days after the loss, send us a *proof of
> loss*, *which is your statement of the amount you are
> claiming* under the policy signed and sworn to by
> you, *and which furnishes us with the following
> information*:
>
> * * *
>
> f. *Specifications of damaged buildings and detailed
> repair estimates*;
>
> * * *
>
> i. *The inventory of damaged personal property*
> described in J.3. above.

44 C.F.R. Pt. 61. App. A(1), Art. VII(J) (emphasis added).

　　　Regardless, and as set forth above, (1) it is impossible to determine from the documents

that Plaintiffs submitted what items set forth in the documents comprise the amounts claimed in

the proof of loss; and (2) the items for which Plaintiffs seek coverage here were not even

submitted with the original proof of loss form.  Accordingly, Plaintiffs' claim should be denied

due to their failure to comply with the SFIP's proof of loss requirements.

      B.      <u>Plaintiffs Are Not Entitled To Any Additional Payments For Debris Removal.</u>

Plaintiffs allege that they are entitled to summary judgment on their claims because

Standard Fire improperly refused to move the contents debris removal costs from the contents

limits of Coverage A to the building limits of Coverage B, which would have allowed payment

for all debris removal costs (under Coverage A, which still have available coverage), and (2)

additional contents damages (because eliminating debris removal charges from the contents

estimate would have provided for additional amounts under Coverage B).  Plaintiffs are wrong.

As set forth below, Standard Fire was required, pursuant to FEMA guidelines, to apply all

contents debris removal costs to Coverage B.  Contents manipulation is only covered under

Coverage A if it is a function of the building repair.  Accordingly, Plaintiffs' motion for

summary judgment must be denied.[5]

The Dwelling SFIP provides as follows:

## COVERAGE C - OTHER COVERAGES

### 1. Debris Removal

**a.** We will pay the expense to remove non-owned
debris on or in insured property and owned
debris anywhere.

\*\*\*

---

[5] As an initial matter, Plaintiffs argue that the SFIP is ambiguous on the proper limits of Coverage C and that, under the doctrine of contra preferendum, the purported ambiguity must be construed in favor of Plaintiffs (i.e., by concluding that the limits of Coverage C is determined by combining the limits of Coverages A and B).  Inexplicably, Plaintiffs cite to a number of cases in other jurisdictions and not arising under the SFIP, despite the fact that Standard Fire's counsel provided Plaintiffs' counsel with *Jacobson v. Metropolitan Property & Casualty Insurance Co.*, 672 F.3d 171 (2nd Cir. 2012), a controlling decision that contra preferendum does not apply in the context of the SFIP.  As set forth herein, there is no ambiguity here, but, under *Jacobson*, the principle would not apply in any event.

      **c.** This coverage does not increase the Coverage **A**
      or Coverage **B** limit of liability.

44 C.F.R. Pt. 61, App. A(1) and App. A(1).  Bulletin W-10035, which FEMA issued on March

31, 2010 to aid in the interpretation of this provision, pertinently provides:

> • Contents manipulation does not extent to items being replaced in the
>   adjuster's estimate.
> • Documented contents manipulation expenses may be charged against Building
>   coverage when they are a function of the covered building repair.

(*See* FEMA Bulletin W-11035).[6]

      Neither Standard Fire nor the Court has the authority to contradict FEMA's

interpretation of its own regulations, as per binding Supreme Court precedent.  As numerous

recent U.S. District Courts have observed, "FEMA's interpretation of its own regulations is

entitled to substantial deference by this Court."  *Davis v. Nationwide Mutual Fire Ins. Co.*, 783

F.Supp.2d 825 (E.D. Va. 2011) (relying on FEMA Bulletin) (*citing Stinson v. United States*, 508

U.S. 36, 45 (1993)); *see also Ginart v. State Farm Cas. Ins. Co.*, No. 07-cv-6841, 2009 WL

537092 (E.D. La. March 4, 2009) (same); *Remund v. State Farm Fire & Cas. Co.*, No. 07–cv–

448, 2010 WL 2025591 (D.Utah May 18, 2010) (same); *Harbour Light Towers Ass'n, Inc. v.

Ameriflood, LLC*, No. 10–2183, 2011 WL 2517222 (M.D. Fla. June 23, 2011) (same); *Geisler v.

Don Hunt & Associates, Inc.*, No. 11–1113–JTM 2012 WL 966119 (D.Kan. March 21, 2012)

(same).  Accordingly, FEMA's interpretation of the scope of Coverage C, as set forth in FEMA

Bulletins W-11030 is controlling here.

      Indeed, if this Court were to order Standard Fire to make any payment to Plaintiffs

without strictly enforcing the terms of the SFIP and FEMA's related mandates, such action could

---

[6] FEMA Bulletin W-11035 is attached hereto as Exhibit B.  Standard Fire respectfully requests
that, pursuant to Fed. R. Evid. 201(b)(2), the Court take judicial notice of the March 31, 2010, FEMA
Bulletin W-11035.

be deemed a violation of the Appropriations Clause of the United States Constitution.  In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424 (1990), the Supreme Court recognized that the Appropriations Clause bars the judiciary from awarding any monetary claim against the federal government that is not authorized by statute.  Id. at 424.  The Court stated that, where federal funds are at stake, the Appropriations Clause assures "that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to . . . the individual pleas of litigants."  *Richmond*, 496 U.S. at 428; *see also Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998) (same).  *Richmond* is directly applicable because, as noted above, any flood loss claim that would be paid to Plaintiff would ultimately be paid with funds from the Federal Treasury.

Additionally, Standard Fire does not have the ability under the NFIP to ignore a FEMA mandate – i.e., a FEMA Bulletin.  By federal law, WYO Companies cannot waive or vary the terms and conditions of the SFIP without the express written consent of the Federal Insurance Administrator.  *See* 44 C.F.R. §§ 61.4(b), 61.13(d) - (e), 62.23(c) - (d).  Here, there is no dispute (nor even any contrary allegation) regarding whether the Federal Insurance Administrator gave his express written consent to allow contents debris removal costs to be included in the building estimate.  He did not.  Further, FEMA has spoken directly to the point in Bulletin W-11035 and, in response to Plaintiffs' appeal of the denial of their flood claim, ***FEMA expressly rejected Plaintiff's contentions***.  (*See* Second Homes Declaration, ¶ 8).  Accordingly, Plaintiffs' claim must be denied.

12

C.     Plaintiffs Have Presented No Evidence To Suggest That Standard Fire Improperly
       Allocated Debris Removal Costs To The Contents Limits.

It is noteworthy that, *even as of today*, Plaintiffs have not provide any evidence that the

debris removal costs, which it seeks to have allocated to the Building limits, actually constitute

Building debris.  This is so despite the fact that Standard Fire has repeatedly and candidly invited

Plaintiffs to provide documentation with which Standard Fire could seek a FEMA waiver for

additional payment, if Plaintiffs were to provide evidence that the debris removal costs (whether

allocated to and paid under the Contents limits or not paid because of the Contents limits were

reached) related to building debris.[7]  Plaintiffs have failed to do so, and have not provided

Standard Fire with a single new document, even in response to written discovery requests.  There

is, therefore, no basis to move any debris removal costs that were allocated to the Contents limits

(thereby freeing up additional Contents limits for unpaid contents), or to pay additional, unpaid

debris removal costs under the Building limits.  For this reason, as well, Plaintiffs' Motion

should be denied.

---

[7] In that regard, Plaintiffs' statement that "it makes no sense that the $85,000 available to the
Houles to replace their personal belongings must be reduced by the cost of removing neighbors' debris
that washed upon onto their property, as [Standard Fire] incredibly contends" is incredulous.  Standard
Fire has never taken this position.  Moreover, Standard Fire's counsel has encouraged Plaintiffs' counsel,
on several occasions, to provide evidence of non-owned debris touching the insured building, which
counsel would pass along in an attempt to obtain a FEMA waiver for any such costs under Coverage A.

IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Standard Fire's Motion and Reply, Standard Fire respectfully requests that Plaintiffs' Cross-Motion for Summary Judgment be denied with prejudice.

Dated:         Burlington, Vermont
               February 5, 2014

                                        /s/ Matthew B. Byrne
                                        Matthew B. Byrne, Esq.
                                        Gravel & Shea PC
                                        76 St. Paul Street, 7th Floor, P. O. Box 369
                                        Burlington, VT  05402-0369
                                        (802) 658-0220
                                        mbyrne@gravelshea.com

                                        and

                                        Craig R. Blackman, Esq.
                                        Gina M. Stowe, Esq.
                                        Stradley Ronon Stevens & Young, LLP
                                        2005 Market Street
                                        Philadelphia, PA  19103

                                        For Defendant, The Standard Fire Insurance
                                        Company