```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

MARY AND RICHARD HOULE,          :
                                 :
    Plaintiffs,              :
                                 :
        v.                    :     Case No. 2:13-cv-44
                                 :
THE STANDARD FIRE INSURANCE      :
COMPANY,                         :
                                 :
    Defendant.               :

**OPINION AND ORDER**

Plaintiffs Mary and Richard Houle suffered property damage as a result of Tropical Storm Irene.  They submitted insurance claims to Defendant The Standard Fire Insurance Company ("Standard Fire"), received partial payments, and brought this action seeking additional payments.  Standard Fire argues that the Houles are not entitled to any further recovery because they failed to file a proper proof of loss, and the parties disagree about the policy limits for debris removal.  Now before the Court are cross-motions for summary judgment on these questions.  For the reasons set forth below, the cross-motions for summary judgment are DENIED.

<u>Factual Background</u>

The Houles own a home near the Winooski River in Richmond, Vermont.  When Tropical Storm Irene brought heavy rain to the region in August 2011, the river swelled and flooded causing substantial damage to the Houles' home, its contents, and adjacent structures.  An independent adjuster appointed by

Standard Fire determined that the exterior water line on the home was twenty-four inches, and that some of the interior flooded to as much as seven inches.

The Houles had purchased a flood insurance policy from Standard Fire, which provided three forms of relevant coverage: building coverage (Coverage A); contents coverage (Coverage B); and debris removal coverage (Coverage C). Building coverage under Coverage A is subject to a $250,000 sublimit. Contents coverage under Coverage B has an $85,000 sublimit. Coverage C has no independent sublimit, but provides that debris removal coverage "does not increase the Coverage A or Coverage B limit of liability."

The Houles claim to have suffered content losses in excess of $90,000, thereby exhausting the $85,000 policy limit and $5,000 deductible under Coverage B. Standard Fire initially paid $74,011 on their contents claim, including $6,057 for contents debris removal. Standard Fire also paid $10,239 for building damage, including $645 for building debris removal. When the Houles submitted a supplemental claim for debris removal in the amount of $26,346.75, Standard Fire paid $10,989, which represented the remaining available amount under the Coverage B sublimit. In doing so, Standard Fire explained that the debris identified by the Houles was comprised of "damaged contents owned by them," and that the Coverage B sublimit therefore applied.

ECF No. 25-15 at 2.

The Houles' motion for summary judgment argues that their debris removal claim should not be subject to the Coverage B limit of liability. They first note that Coverage C does not differentiate between contents and building debris. The Houles further contend that "debris is debris," and that separating debris by type is often not feasible. ECF No. 29 at 12. Third, the Houles argue that debris from properties upstream should not count against their personal contents limit under Coverage B.[1]

The Houles appealed the partial denial of their debris removal claim to FEMA. FEMA responded to the Houles' attorney in a letter dated August 14, 2012, and affirmed Standard Fire's payment amounts. ECF No. 40-1 at 4. In a letter dated August 21, 2012, Standard Fire further informed counsel that the re-inspection report from the Senior General Adjuster had concluded that costs for content debris removal may not be included in the Coverage A building estimate. *Id.* at 6.

Standard Fire's summary judgment motion argues that the Houles are barred from any further recovery because their proof

---

[1] The policy states that the insurer "will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere." ECF No. 29-16 at 10. Standard Fire's counsel informs the Court that if the Houles "provide evidence of non-owned debris touching the insured building," counsel will "pass [this evidence] along in an attempt to obtain a FEMA waiver for any such costs under Coverage A." ECF No. 40 at 16.

3

of loss form lacked supporting documentation.[2]  As detailed more
fully below, the Houles provided Standard Fire with substantial
documentation between September and November 2011, including
inventories of damaged or destroyed personal property,
photographs, and a structural damage estimate from G.W. Savage.
When the Houles' attorney timely submitted their proof of loss
form on January 2, 2012, he did not attach or re-send the
documentation previously provided to the insurer.  Standard Fire
argues that counsel's failure to submit documentation with the
proof of loss form entitles it to summary judgment.

The Complaint contests Standard Fire's payments under
Coverages A, B, and C for building damage, contents damage, and
debris removal.  At summary judgment, the Houles are seeking only
resolution of their debris removal claim under Coverage C.
Standard Fire has moved for judgment on all claims.

## Discussion

I.  Summary Judgment Standard

The Court may grant summary judgment if "the movant shows

---

[2] The Houles have moved to strike the declaration of Standard Fire's affiant Scott Holmes.  Holmes identifies himself as the Director of Technical Services at Standard Fire, and bases his affidavit on his review of corporate records.  An affiant may testify to the contents of records they have reviewed in their official capacities.  *See Searles v. Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461-62 (S.D.N.Y. 2000).  Holmes does reference documents that are not attached to his affidavit and are not cited as part of the record, but the Houles have not raised any hearsay objections and the Court does not rely upon those statements for its summary judgment rulings.  The motion to strike (ECF No. 30) is therefore DENIED.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where there are cross motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quotations omitted).

II. The National Flood Insurance Program

The Houles' policy with Standard Fire is a Standard Flood Insurance Policy ("SFIP") issued under the National Flood Insurance Program ("NFIP"). Congress created the NFIP because "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). Accordingly, "[t]he NFIP . . . is administered by FEMA and supported by taxpayer funds, which pay for claims that exceed the premiums collected from the insured parties." *Jacobson v. Met. Life Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174

5

(2d Cir. 2012).

Congress has authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019. Pursuant to this authority, FEMA created the Write-Your-Own, or "WYO" Program, which allows private insurers to issue and administer flood-risk policies under their own names. 44 C.F.R. § 62.23(a), (g). Standard Fire is a WYO insurer under the NFIP.

While private insurance companies administer the NFIP, "[i]t is the Government, not the companies, that pays the claims." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 184 (2d Cir. 2006). Private WYO companies therefore act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), and are required to strictly enforce the applicable regulations. As the Second Circuit has explained:

> In a private insurance context, policy exclusions and limitations are to be accorded a strict and narrow construction. Ordinarily, such a construction is to the benefit of the insured: strict construction makes the terms of the policy easier to understand and easier to satisfy.
>
> . . .
>
> But when private parties make demands on the public fisc, different principles are at stake. . . . In the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such

6

policies.

*Jacobson,* 672 F.3d at 175-76 (internal quotations and citations omitted); *see also DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 83 (1st Cir. 2013) ("the Constitution mandates strict compliance with the [Standard Flood Insurance Policy]"). These principles apply even when strict construction of a FEMA insurance policy "create[s] ostensibly inequitable results." *Jacobson*, 672 F.3d at 176.

III. Standard Fire's Motion for Summary Judgment

Standard Fire argues that the Houles' proof of loss did not comply with the policy requirements, and that summary judgment should be granted on that basis. In *Jacobson*, the Second Circuit specifically held that SFIP proof-of-loss requirements are to be strictly construed and enforced. *Id.* at 175.

Under the terms of the SFIP, as codified in the federal regulations, upon suffering a loss an insured party must: provide prompt notice to the insurer; separate damaged and undamaged property for inspection; and prepare an inventory of damaged property "showing the quantity, description, actual cash value, and amount of loss," attaching all "bills, receipts and related documents." 44 C.F.R. Pt. 61 App. A(1), Art. VII(J). Within sixty days after the loss, the insured is required to send the insurer a proof of loss "which furnishes . . . [s]pecifications of damaged buildings and detailed repair estimates" and an

7

inventory of damaged personal property.  *Id.*  For victims of Tropical Storm Irene, FEMA extended the sixty-day deadline to 150 days, with a resulting proof of loss filing deadline of January 26, 2012.

There is no dispute that the Houles' initial proof of loss was timely.  Standard Fire contends, however, that the proof of loss was insufficient as it did not attach any supporting documentation.  The Houles counter that Standard Fire's claim is meritless, citing their ongoing communications with the insurer prior to the submission of their January 2012 proof of loss.  For support, they have provided an affidavit from Cara LaBounty, who reportedly helped the Houles document their claims.  LaBounty's affidavit demonstrates that between September and November 2011, the Houles provided Standard Fire's insurance adjuster with substantial documentation, including a list of over 200 personal items that were damaged or destroyed, the estimated value thereof, photographs of many of those items, and a structural damage report prepared by G.W. Savage.  The adjuster responded with her own claims reports, referencing the Houles' documentation.

On October 26, 2011, Standard Fire presented the Houles with a standard proof of loss form proposing a total payment of $8,217.46.  Because they disputed the proposed coverage amount, the Houles declined to sign the proof of loss.  In November 2011,

Standard Fire offered a revised proof of loss with a proposed payment of $58,383.78. The Houles again refused to sign. Through counsel, the Houles timely submitted their own proof of loss form, seeking $90,000 for contents and an aggregate amount of $175,746.14. The LaBounty affidavit explains that "[a]t this point in time, [Standard Fire] had received hundreds of pages of photographs, receipts and estimates regarding the property damage that had occurred – all of which had been analyzed by [Standard Fire] and inventoried in . . . [the] claims handlers' reports." ECF No. 29-2 at 3.

Given this undisputed record, the Court finds no basis for granting summary judgment on the ground that the proof of loss did not include the required documentation. That documentation was in fact provided to the insurer prior to the proof of loss deadline. While the Houles did not re-submit the same documentation with their proof of loss form, they clearly complied with the requirements of the SFIP by providing their insurer with prompt notice, inventories, bills, receipts and estimates. *See Sun Ray Village Owners Assoc. v. Old Dominion Ins. Co.*, 546 F. Supp. 2d 1283, 1291-92 (N.D. Fl. 2008) ("an insured must submit enough support to allow the insurer to evaluate the merits of the claim"); *cf. Young v. Imperial Fire & Casualty Ins. Co.*, 2014 WL 1456408, at *4 (E.D. La. Apr. 15, 2014) (holding that proof of loss form supported by separately-

filed damages estimate was in compliance with SFIP). Acknowledging that the SFIP requirements must be strictly enforced, the Court concludes that Standard Fire has failed to demonstrate non-compliance as a matter of law.

Standard Fire also contends that it is unable to determine how the Houles calculated the "net amount claimed" on their proof of loss form. Viewing the facts in a light most favorable to the non-moving party, the record indicates that the Houles have provided Standard Fire with sufficient documentation to support the amounts claimed in their Complaint. Indeed, the current disputes in this case center upon an additional contents claim and a debris removal claim,[3] each of which the Houles documented in conjunction with their proofs of loss.[4]

Standard Fire's final argument is that some of the coverage sought by the Houles was not included in their initial proof of loss. This argument pertains to the supplemental proof of loss for debris removal in the amount of $26,346.75. FEMA granted a waiver for that claim, effectively extending the 150-day deadline

---

[3] The Houles summarize these claims in their memorandum in support of summary judgment. ECF No. 29 at 1-2. They note that any claim for structural damage will likely be mooted by a grant recovery under the federally-funded Hazard Grant Mitigation Program. *Id.* at 3 n.1. Their memorandum also clarifies that they are not seeking to resolve their additional contents claim at summary judgment. *Id.* at 5 n.2.

[4] The contents claim documentation is itemized in a spreadsheet generated by the Houles, showing their aggregate contents claim of $104,584. ECF No. 29-11. Debris removal costs were documented by a receipt from Beech-Nut Builders and an estimate from 1-800 Got Junk?. ECF No. 25-20 at 7-9.

for the purpose of supplementation. In light of the FEMA waiver, Standard Fire is not now entitled to summary judgment simply because those items were not included in the initial submission. Standard Fire's motion for summary judgment is therefore DENIED.

IV. The Houles' Motion for Summary

The Houles have moved for summary judgment on Standard Fire's interpretation of the policy limitations for debris removal. As discussed above, the relevant policy provision (Coverage C) has no independent sublimit, stating instead that "[t]his coverage does not increase the Coverage A or Coverage B limit of liability." Standard Fire has assigned much of the Houles' debris removal claims to the Coverage B limit for contents, which is capped at $85,000. The Houles argue that this limitation is not supported by the policy language.

Standard Fire initially paid the Houles $74,011 for contents and related debris removal. When the Houles' submitted a supplemental debris removal claim for $26,347, Standard Fire paid an additional $10,989, which represented the remainder available under the Coverage B limit. Standard Fire explained that it was applying the Coverage B limit because "[t]he items [the Houles] have designated as debris are damaged contents items owned by [the Houles] and are not covered under the building portion of the policy." ECF No. 25-15 at 2.

The Houles argue that nowhere in the policy or the federal

11

regulations are they required to categorize debris as either contents or building materials. Their memorandum posits that this is "probably for the simple reason that no one dealing with the trauma of a flood loss should be forced to try to sort the toxic muck of their ruined home into separate piles of 'contents' versus 'structure.'" ECF No. 29 at 3. The Houles also argue that debris on their property from neighbors up-river should not be counted against their contents coverage.

Viewing the facts in a light most favorable to Standard Fire, the Houles' supplemental debris removal claim for $26,347 related to their own contents. Although the Houles contend that "debris is debris," and that separating different types of materials is not realistic, the record before the Court suggests that such differentiation may have been accomplished and that the debris did not include items from neighboring properties. At the very least, a question of fact exists as to whether the debris in question was actually comprised of contents, and not building materials, owned by the Houles.

The Houles contend that the policy is nonetheless ambiguous, and that under established insurance principles any ambiguity must be determined in favor of the insured. In *Jacobson*, the Second Circuit noted that with federal insurance policies, the insured does not enjoy the usual liberal interpretation of relevant provisions. 672 F.3d at 175. *Jacobson* did not speak

directly to the question of ambiguity. *Compare Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 245 (4th Cir. 2007) (holding that SFIP is subject to standard principles of insurance law, including giving ambiguous terms "the construction most favorable to the insured"). In this case, the Court need not address the treatment of ambiguity in an SFIP, as the relevant provision is not ambiguous. *See Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001) (noting that the rules governing ambiguity do "not come into play unless [the] court first determines that the contract is, in fact, ambiguous").

"Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). Here, Coverage C applies to debris removal, the cost of which cannot "increase" either the building or contents sublimits under Coverages A or B. By referencing both the Coverage A and Coverage B sublimits, the policy contemplates different types of debris: building debris and contents debris. Removal costs for such debris are covered, but the costs are included within the applicable sublimits. If those costs were not included within the "Coverage A or Coverage B limit of liability," they would not have any potential to "increase" those limits.

Accordingly, if an item of personal property (contents) is damaged, the policy will cover both the item itself under Coverage B and the cost of removing the item under Coverage C. Without Coverage C, removal costs would not be covered. Costs incurred under Coverage C, however, are included within the limit for Coverage B and will not "increase" that limit. Building debris would be similarly covered, but may not "increase" the Coverage A limit of liability.

This interpretation is bolstered by FEMA's own guidance. On March 10, 2010, FEMA issued a memorandum to provide clarity with respect to the allocation of contents manipulation costs. According to FEMA, "[d]ocumented contents manipulation expenses may be charged against Building coverage when they are a function of the covered building repair." ECF No. 40-2 (FEMA Bulletin W-10035). In other words, contents and building materials are discrete, and costs associated with moving contents cannot be attributed to building coverage unless it is part of the building repair. The Senior General Adjuster applied this guidance to the Houles' claim, and determined that "FEMA WYO Bulletin W-10035 does not allow for . . . contents debris removal to be included on the building estimate." ECF No. 40-1 at 6.

The Court therefore finds that if, in fact, the Houles' remaining debris removal claim applies solely to their personal contents, payment is limited by the sublimit for Coverage B. As

14

Standard Fire's correspondence to the Houles characterizes the debris as "contents items owned by them," the Houles are not entitled to summary judgment on their debris removal claim. Their cross-motion for summary judgment is therefore DENIED.

## Conclusion

For the reasons set forth above, the Houles' motion to strike the declaration of Scott Holmes (ECF No. 30), Standard Fire's motion for summary judgment (ECF No. 23), and the Houles' cross-motion for summary judgment (ECF No. 29) are DENIED.

DATED at Burlington, in the District of Vermont, this 4th day of August, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
